In re Paul S. HUDSON, Debtor.

Washington 1993, Inc., Plaintiff,

v.

Paul S. Hudson, Defendant.

Bankruptcy No. 00–11683.
Adversary No. 00–90091.

United States Bankruptcy Court,
N.D. New York.

Nov. 17, 2009.

Emery Celli Brinckerhoff & Abady, LLP, Sarah Netburn, Esq., New York, NY, for Debtor–Defendant.

ROBERT E. LITTLEFIELD, JR., Chief Judge.

The district court remanded this matter to evaluate the impact, if any, of its rulings in *Corvetti v. Hudson* and *Hudson v. Corvetti* on this court's decision to deny Paul S. Hudson, debtor-defendant, a discharge in bankruptcy. Before the court is Mr. Hudson's motion for vacatur of this court's August 21, 2001 decision denying his discharge.[1] The court, upon evaluating all of

---

1. There is nothing in the record denoted as a response to the remand, but Mr. Hudson later

Mr. Hudson's arguments, determines that: (1) the district court's subsequent rulings in *Corvetti v. Hudson* and *Hudson v. Corvetti* do not impact its denial of Mr. Hudson's discharge, and (2) Mr. Hudson is not entitled to vacatur of the court's 2001 decision denying his discharge.

## JURISDICTION

The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 157(b)(1), 157(b)(2)(*l*), and 1334(b).

## PROCEDURAL AND FACTUAL HISTORY

This case has a multifaceted and tortured history. Mr. Hudson, an attorney licensed to practice in New York, commenced the instant bankruptcy case by filing a Chapter 7 petition on November 12, 1999 in Maryland. (Case No. 00–11683 (the "Main Case") No. 1.) Mr. Hudson testified that he decided to file for bankruptcy because of several lawsuits pending in New York filed by Richard Corvetti or by Mr. Corvetti on behalf of Washington 1993, Inc. ("Washington 1993").[2] (Day 4 Trial Tr. 214, Oct. 26, 2000 (Adv.Pro. No. 00–90091, No. 45).) This included a lawsuit for fraudulent conveyance of the settlement money received by Mr. Hudson in an Ohio wrongful death lawsuit against Pan Am Airlines in connection with the death of his daughter in the Lockerbie, Scotland terrorist attacks (the "wrongful death case"). (*Id.*) By filing for bankruptcy, Mr. Hudson effectively stayed all proceedings in the New York courts. Mr. Hudson did not list these lawsuits on his Statement of Financial Affairs upon filing.

On January 12, 2000, Mr. Corvetti filed several motions in the Maryland bankruptcy court, including a motion for change of venue and three motions seeking relief from the automatic stay (Main Case Nos. 13, 14, 16, 18.) In the venue motion, Mr. Corvetti alleged that Mr. Hudson failed to disclose settlement proceeds to which Mr. Hudson was allegedly entitled in the wrongful death case and that Mr. Hudson had conveyed the suit to his sons. (Main Case No. 13.)

Meanwhile, Washington 1993 brought this adversary proceeding against Mr. Hudson objecting to his discharge pursuant to 11 U.S.C. § 727(a)(4)(A),[3,4] relying primarily on Mr. Hudson's failure to schedule the transfers of $102,902.76 and $37,000 to his sons as assets/revocable transfers in his petition, and objecting to certain debts pursuant to § 523.[5] (Adv.

---

indicated that his motion for vacatur was also intended as a response to the district court's remand. See discussion *infra* p. 17.

**2.** Messrs. Hudson and Corvetti were business partners in a real estate venture known as Washington 1993, Inc. As a result, all actions brought by Washington 1993, Inc. are closely aligned with Mr. Corvetti's interests.

**3.** This case was filed before October 17, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (hereinafter "BAPCPA") became effective. Thus, all statutory references herein are to the United States Bankruptcy Code, 11 U.S.C. §§ 101–1330 (2004), unless otherwise indicated.

**4.** Section 727(a)(4)(A) provides in relevant part:

(a) The court shall grant the debtor a discharge, unless—

. . . .

(4) the debtor knowingly and fraudulently, in or in connection with the case-

(A) made a false oath or account

11 U.S.C. § 727(a)(4).

**5.** Specifically, Washington 1993 alleged causes of action under § 523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6), which provide as follows:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

Pro. No. 1.) Washington 1993 also alleged that Mr. Hudson's wrongful death claim against the government of Libya for the death of his daughter in the Lockerbie, Scotland plane crash resulting from terrorists attacks was worth more than the zero value that Mr. Hudson scheduled. (*Id.*)

On March 14, 2000, the Maryland court granted Mr. Corvetti's venue motion and transferred the Chapter 7 case and the adversary proceeding to this court. (Main Case No. 45.) Mr. Hudson, however, was not a stranger to this court, having filed two Chapter 11 petitions in 1995 on behalf of himself and a business entity he owned and operated, as well as a Chapter 7 petition on behalf of another business entity he owned and operated in 1999. (*See* Case Nos. 95–10607, 95–10609, 99–16518.) Mr. Hudson's individual Chapter 11 case was eventually dismissed. At the time of the dismissal, a motion filed by the trustee to convert the case to Chapter 7 on the grounds that Mr. Hudson failed to schedule an asset was pending.

On the same day Mr. Hudson's current case was transferred from the Maryland court, more than a month after the instant adversary proceeding was filed and served, over two months from the filing and service of the venue motion, and over four months from the petition date, Mr. Hudson filed his Second Amended Statement of Financial Affairs.[6] (Main Case No. 39.) In this statement, Mr. Hudson listed the lawsuits involving himself and either Mr. Corvetti or Washington 1993, including the fraudulent conveyance action, which were pending when he filed his petition. (*Id.*)

After transfer of the case and adversary proceeding to this court, Washington 1993 filed a motion for partial summary judgment in the adversary proceeding. (Adv. Pro. No. 12.) Washington 1993 alleged that Mr. Hudson's failure to list any pending litigation he had involving either Washington 1993 or Mr. Corvetti in the answer he gave to Question 4(a) on his original Statement of Financial Affairs amounted to fraud under § 727(a)(4)(A). (*Id.*) In his opposition to the summary judgment motion, Mr. Hudson pointed out that the § 727(a)(4)(A) cause of action stated in the complaint did not allege a failure to list lawsuits on the Statement of Financial Affairs. (Adv.Pro. No. 18.) As a result, Mr. Hudson argued that because the complaint did not allege that particular failure he lacked notice and that § 727(a)(4)(A) relief could not be granted on those grounds. (*Id.*) Mr. Hudson further alleged that any failure to list the lawsuits on his Statement of Financial Affairs was a clerical error, and he attached the affidavit of his former counsel, James Greenan, Esq., explaining the omission of the lawsuits. (*Id.*) The

. . . .
(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtors' or an insiders' financial condition;
(B) use of a statement in writing—
(i) that is materially false;
(ii) respecting the debtors' or an insiders' financial condition;
(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive; or
. . . .
(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;
. . . .
(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.
11 U.S.C. § 523(a).

6. While labeled as a second amendment, the docket does not show that a prior Amended Statement of Financial Affairs was ever filed.

court ultimately denied summary judgment, finding that questions of fact existed and informed both parties that it wanted to hear Mr. Hudson's explanation regarding his failure to list the lawsuits that Washington 1993 and Mr. Corvetti had pending against him.

Extensive testimony was proffered at the seven-day trial in October 2000. Mr. Greenan testified that he had advised Mr. Hudson that Maryland was a proper venue for his case and subsequently filed a "bare bones" petition on November 12, 1999. (Day 6 Trail Tr. 121, Oct. 30, 2000 (Adv. Pro. No. 52).) Mr. Greenan explained that a bare bones petition provides the debtor's name, address, and a list of creditors, but not lawsuits, and that he and Mr. Hudson decided to file in such a manner to stay a trial on the following Monday involving Washington 1993. (*Id.* at 122–23, 129; Day 4 Tr. 214.) Mr. Hudson faxed Mr. Greenan information for his bankruptcy filing, including a two page list of lawsuits, which included the lawsuits involving Mr. Corvetti and Washington 1993 (Day 6 Tr. 123, 127.) Mr. Greenan did not need the list for filing the bare bones petition and, thus, did not use it. (*Id.* at 123.)

After the bare bones petition was filed, Mr. Greenan sent Mr. Hudson a questionnaire his firm required its bankruptcy clients to fill out with all the information necessary for filing their petition and Statement of Financial Affairs. (*Id.* at 129.) Mr. Greenan did not use the list of lawsuits faxed by Mr. Hudson before filing the bare bones petition to prepare the Statement of Financial Affairs because he had requested that Mr. Hudson provide the information on the questionnaire. (*Id.* at 129–30.) Mr. Greenan further testified that Mr. Hudson provided him with a "less complete" list of pending lawsuits in his responses to the questionnaire, omitting all the suits involving Mr. Corvetti and Wash-

ington 1993. (*Id.* at 130.) As a result, they were not included in the Statement of Financial Affairs by Mr. Greenan, and were not added by Mr. Hudson after he spent several hours reviewing it. (*Id.* at 174.) Mr. Hudson later testified that he had provided an additional page with his questionnaire that listed the missing lawsuits. (*Id.* at 174.)

### *2001 Littlefield Decision*

Upon consideration of the voluminous pre-trial submissions, trial testimony, documentary evidence, and post-trial memoranda, the court denied Mr. Hudson a discharge pursuant to § 727(a)(4)(A) (the "2001 Littlefield Decision"). *Washington 1993, Inc. v. Hudson (In re Hudson)*, No. 00–11683, Adv. Pro. No. 00–90091 (Bankr. N.D.N.Y. Aug. 21, 2001) (Adv.Pro. No. 62). Specifically, the court found that

[Mr. Hudson] had intentionally failed to include the information regarding the wrongful conveyance lawsuit on his bankruptcy schedules in order to prevent the Trustee, and thus Debtor's creditors, from realizing any of the potential money from that lawsuit. The [court] based his decision primarily on: 1) Hudson's knowledge of the filing requirements for a bankruptcy petition as shown by his previous bankruptcy filings; 2) Hudson's failure to include the lawsuit in his Statement of Financial Affairs and schedules; 3) Hudson's failure to amend his financial statement following three "stay relief motions" by Corvetti which included specific allegations regarding the unlawful conveyance lawsuit; and 4) Hudson's failure to amend his financial statement after Corvetti began an adversary proceeding in February 2000 which included various allegations regarding Hudson's failure to schedule the transfers as assets, including a claim under 11 U.S.C. § 727(A)(4)

which again specifically referenced the lawsuit.

*Hudson v. Washington 1993, Inc.,* No. 3:01–CV–1474, slip op. at 2–3 (N.D.N.Y. Sept. 27, 2002) (Adv.Pro. No. 77). As the court ultimately denied Mr. Hudson's discharge, the § 523 causes of action were rendered moot. *2001 Littlefield Decision,* No. 00–11683, Adv. Pro. No. 00–90091, slip op. at 24 (Bankr.N.D.N.Y. Aug. 21, 2001).

### 2002 McAvoy Affirmance

Mr. Hudson appealed the 2001 Littlefield Decision denying his discharge to the district court (Adv.Pro. No. 66), which affirmed it by written decision (the "2002 McAvoy Affirmance"). *Hudson v. Washington 1993, Inc.,* No. 3:01–CV–1474 (N.D.N.Y. Sept. 27, 2002). In the appeal, Mr. Hudson argued that this court had made three discernable errors: (1) the court impermissibly denied his discharge based on grounds not pled in the complaint, (2) the court rendered the 2001 Littlefield Decision after improperly taking judicial notice of documents outside of the record, and (3) the 2001 Littlefield Decision was not based on the record and amounted to clear error. *Id.* at 1–2. Judge Thomas J. McAvoy rejected all three arguments. Mr. Hudson subsequently moved for reconsideration of the 2002 McAvoy Affirmance. (Case No. 3:01–CV–1474, Dist. Ct. No. 70.)

### Settlement Negotiations with the Trustee

After Judge McAvoy affirmed the 2001 Littlefield Decision denying Mr. Hudson's discharge, Mr. Hudson, the Trustee, and members of Mr. Hudson's family entered into settlement negotiations to resolve all outstanding litigation, controversies and claims of the Trustee against Mr. Hudson and/or his family. The Stipulation of Settlement specifically provided for the Trustee's release of Mr. Hudson and members of his family in exchange for payment of $36,500 to the estate and one-fifth of any recovery received from the Libyan action. (Main Case No. 148, Ex. A at 2.) Mr. Hudson filed a motion seeking this court's approval of the proposed settlement (Main Case No. 148), and Mr. Corvetti opposed and sought various forms of relief (Main Case No. 147). At the March 27, 2003 hearing on Mr. Hudson's motion, it was apparent that the Trustee and Mr. Hudson were not in complete agreement, despite the fact that both had signed the Stipulation of Settlement. Both motions were denied without prejudice over the opposition of the responding party by an order dated May 20, 2003. (Main Case No. 163.)

### 2003 McAvoy Remand

Meanwhile, in his motion for reconsideration of Judge McAvoy's affirmance of the denial of Mr. Hudson's discharge, Mr. Hudson informed Judge McAvoy of the settlement negotiations between himself and the Trustee. *See Hudson v. Washington 1993, Inc.,* No. 3:01–CV–1474, slip op. at 3 (N.D.N.Y. June 13, 2003) (Adv.Pro. No. 81). As a result, Judge McAvoy granted Mr. Hudson's motion for reconsideration and remanded the matter with the following specific instructions to this court:

This "new evidence" [of potential settlement] was not, however, available to the bankruptcy court in making its decision to deny Hudson a discharge. The parties have represented that the bankruptcy court is currently deciding whether to approve settlement of the section 727 claims. Settlement and discharge often go hand in hand. *The Court finds that the bankruptcy court should be given the opportunity, in the first instance, to determine whether the settlement involving the Wrongful Death lawsuit affects the determination that the debtor should not be given a discharge. See In re Maynard,* 269

B.R. 535, 541–42 (D.Vt.2001) (discussing unique position of bankruptcy courts in settlement and discharge proceedings).

Consequently, on reconsideration, the Court determines that the matter should be **remanded** to the bankruptcy court for further determination.

*Id.* at 6–7 (emphasis added). Nowhere in the opinion did Judge McAvoy indicate an intent to vacate his earlier affirmance of this court's denial of discharge. Rather, he sought this court's determination of whether the potential settlement with the Trustee changed the court's opinion regarding Mr. Hudson's discharge—a very narrow instruction. This court thus took up the matter for review.

### Hudson–Corvetti Settlement and Related Litigation

On December 28, 2001, after this court issued its decision denying Mr. Hudson's discharge, but before Judge McAvoy affirmed that decision, Judge McAvoy approved the settlement of Mr. Corvetti's claims against Mr. Hudson that were implicated in the § 523 causes of action brought by Washington 1993, which this court had never reached. (Adv.Pro. No. 75.) Judge McAvoy also ordered that "the objection to discharge under § 727(a) shall proceed on appeal to this court." (*Id.*) This order resulted in a new line of litigation between Mr. Corvetti and Mr. Hudson because Judge McAvoy's conclusion that the § 727(a) cause of action should proceed contradicted the settlement agreement, which stated that Mr. "Corvetti shall not oppose [Mr.] Hudson's appeal of the Decision in regards to the denial of discharge pursuant to § 727...." (Settlement Agreement of March 7, 2002, Ex. B (Adv. Pro. No. 245).) Mr. Corvetti believed that Judge McAvoy's order indicated that he may continue to pursue the § 727 cause of action, but Mr. Hudson disagreed. (Case No. 3:01–CV–1474, Dist. Ct. No. 47.)

Thus, the parties petitioned the district court for clarification of the order. Judge McAvoy responded in a written decision on April 8, 2002 holding that:

[t]his Court's order did not in any way approve settlement of the 11 U.S.C. § 727 claims. All language in the approved revised settlement should be construed as not approving of any such settlement. Consequently, should Mr. Corvetti wish to oppose Mr. Hudson's appeal on the section 727 claims, he may do so.

(*Id.* at 3.) Judge McAvoy subsequently issued a Corrected Order for Partial Settlement on Appeal on November 20, 2002, which reads:

It is Ordered that:

1. The Bankruptcy Adversary is settled with regards to all objections to discharge which arise under 11 U.S.C. Section 523(a), and

2. The objection to discharge shall proceed on appeal to this Court ...

3. The payment of the settlement, the signing of the Settlement Agreement, a copy of [which] is designated as Attachment "B" in the Motion to Settle Matter Pending on Appeal dated October 15, 2001, and the exchange of release is approved.

(Adv.Pro. No. 79.) The November 2002 order neither explicitly states that Mr. Corvetti may pursue the § 727 claim, nor does it reference Judge McAvoy's April 2002 opinion that permits him to do so.

In light of this ambiguity, on December 4, 2003, Mr. Corvetti once again requested clarification from the district court, asking whether he was forestalled from being heard on the appeal of the denial of Mr. Hudson's discharge. (Ltr. Requesting Clarification by R.Corvetti, No. 01–CV–1474 (Dist.Ct. No. 132).) Judge McAvoy summarily denied his request. (Dist.

Ct. No. 133.) Mr. Corvetti then brought the issue to this court asserting three causes of action for: (1) a declaration that he could oppose Mr. Hudson's discharge notwithstanding the non-opposition provisions in the Settlement Agreement, (2) a declaration that the parties' Settlement Agreement was void, and (3) an order enjoining the state court from adjudicating Mr. Hudson's breach-of-contract claim based on Mr. Corvetti's alleged violation of the Settlement Agreement. (Varley Aff. 16–17 (Adv.Pro. No. 04–90005, No. 30).) The court resolved Mr. Corvetti's first cause of action holding that had Judge McAvoy intended to reverse his decision permitting Mr. Corvetti to pursue the § 727 cause of action on appeal, the court would have explicitly said so in the November 20, 2002 order.[7] The court memorialized this finding in a written decision on March 17, 2005, thus allowing Mr. Corvetti to continue to oppose Mr. Hudson in the proceedings triggered by the 2003 McAvoy Remand. *Corvetti v. Hudson (In re Hudson)*, No. 00–11683, Adv. Pro. No. 04–90005, (Bankr.N.D.N.Y. Mar. 17, 2005) (Adv.Pro. No. 181).

### 2004 Littlefield Recusal Decisions

On December 12, 2003, Mr. Hudson filed an affidavit and memorandum of law in support of intradistrict transfer of the adversary proceeding pursuant to Local Bankruptcy Rule 1073 or recusal of the court pursuant to 28 U.S.C. §§ 144, 455(a), 455(b)(1), and 455(b)(3). (Adv.Pro.Nos. 108, 110.) Mr. Hudson had made a prior recusal motion at the outset of a separate adversary proceeding presenting some of the same allegations, which the court de-

nied in a memorandum-decision entered on March 12, 2002. *Harris v. Hudson, (In re Hudson)*, No. 00–11683, Adv. Pro. No. 01–90322 (Bankr.N.D.N.Y. Mar. 12, 2002) (Adv.Pro. No. 01–90322, No. 36). Mr. Corvetti, appearing *pro se*, filed opposition requesting that the court adjourn the new recusal motion pending a determination in the related adversary proceeding (Adv. Pro. No. 04–90005) in which the court was determining whether he had standing. (Adv.Pro. No. 113.) Alternatively, Mr. Corvetti argued that many of Mr. Hudson's arguments had been presented in the prior recusal motion and that there were inaccuracies in Mr. Hudson's evaluation of the facts. (*Id.*) Mr. Hudson filed a reply affirmation and supporting memorandum of law arguing that Mr. Corvetti lacked standing to appear on this matter because he was represented by counsel, had miscaptioned his opposition papers in violation of procedural rules, and was barred by the settlement agreement from appearing on the appeal of the § 727 cause of action. (Adv. Pro.Nos. 120, 121.) Kenneth G. Varley, Esq., Mr. Corvetti's attorney in the adversary proceeding, sent a letter to the court on January 6, 2004 explaining that he was not representing Mr. Corvetti on the recusal motion, and that he believed Mr. Corvetti to be within his rights to appear *pro se* on the isolated matter. (Adv.Pro. No. 124.)

A hearing was held on January 8, 2004, but no testimony or evidence was presented, and the matter was taken under advisement. The court issued a written opinion (the "2004 Littlefield Recusal Decision") on January 30, 2004 denying Mr.

---

**7.** The court also found that the rest of the parties' settlement agreement was enforceable. The court memorialized this decision in a written opinion on February 15, 2006. *Corvetti v. Hudson (In re Hudson)*, No. 00–11683, Adv. Pro. No. 04–90005 (Bankr.N.D.N.Y. Feb. 15, 2006) (Adv.Pro. No. 04–90005, No. 155).

Mr. Corvetti appealed to the district court, where Judge Frederick J. Scullin, Jr. affirmed this court's ruling in a written decision on July 9, 2007. *Corvetti v. Hudson*, 1:06–CV–537 (FJS), 2007 WL 2027093 (N.D.N.Y. July 9, 2007) (Adv.Pro. No. 04–90005, No. 182).

Hudson's motion. *Washington 1993, Inc. v. Hudson (In re Hudson)*, No. 00–11683, Adv. Pro. No. 00–90091 (Bankr.N.D.N.Y. Jan. 30, 2004) (Adv.Pro. No. 127). Mr. Hudson filed a Writ of Mandamus with the Second Circuit Court of Appeals, which was ultimately denied for failure to appeal to the district court in the first instance. (Adv.Pro. No. 170.)

In its decision, the court outlined Mr. Corvetti's position in the arguments section, and determined that his appearance *pro se* was permissible under the Federal Rules of Bankruptcy and that any mis-captioning of his opposition papers was excusable error under Federal Rule of Civil Procedure 61. *2004 Littlefield Recusal Decision*, No. 00–11683, Adv. Pro. No. 00–90091, slip op. at 4–5 (Bankr.N.D.N.Y. Jan. 30, 2004).

The court did not adjourn the proceeding as Mr. Corvetti requested, but instead evaluated the merits of Mr. Hudson's argument. First, the court declined Mr. Hudson's motion for intradistrict transfer finding "the power to reassign pending cases an extraordinary one" and that "[i]t is proper and normal for a judge to sit in the same case upon remand and in successive trials involving the same party." *Id.* at 7 (citations omitted). Second, the court determined that Mr. Hudson had failed to carry his burden of alleging actual "bias or prejudice" as required by 28 U.S.C. §§ 144, 455(b)(1), and 455(b)(3) or showing a reasonable inference of partiality as required by 28 U.S.C. § 455(a). *Id.* at 8–12.

Mr. Hudson moved to reconsider the court's decision, but only in the Adversary Proceeding, submitting an Affidavit of Disqualification pursuant to 28 U.S.C. § 144, which he failed to present with his original motion. (Adv. Pro. No 144.) Mr. Corvetti responded by submitting an affirmation dated March 3, 2004 by facsimile to the Clerk's Office. This submission was un-timely, as it was submitted on the day of the hearing in violation of Local Rule 9013–1(c)(1), which provides that answering papers and opposing memoranda must be filed no later than three business days before the return date of the motion. As a result, it is not part of the record. Nonetheless, the court allowed Messrs. Hudson and Corvetti until March 11, 2004 to file post-hearing submissions. No objection was entered to this determination, and both parties filed additional papers. (*See* Adv. Pro. Nos. 150, 151.)

On the motion for reconsideration, Mr. Hudson once again challenged Mr. Corvetti's standing to appear. (Mr. Hudson's Second Mem. of Law 2 (Adv.Pro. No. 150).) Mr. Hudson further alleged that: (1) he had cured his failure to provide an affidavit of disqualification pursuant to 28 U.S.C. § 144, (2) the court had failed to consider the personal and objective bias shown by the 1995 criminal referral of Mr. Hudson it made to the United States Attorney in connection with his 1995 Chapter 11 bankruptcy case based upon an ex parte allegation made by Mr. Hudson's attorney, and (3) the case of *In re Kensington Intl., Inc.*, 368 F.3d 289 (3d Cir.2004), stands for the proposition that recusal is required pursuant to 28 U.S.C. § 455(a) when a judge holds ex parte meetings involving the merits or procedures effecting the merits and no transcripts are made. (Mr. Hudson's First Mem. of Law (Adv. Pro. No 147).)

The court ultimately denied Mr. Hudson's motion for reconsideration in a written decision (the "2004 Littlefield Reconsideration of Non–Recusal"). *Washington 1993, Inc. v. Hudson (In re Hudson)*, No. 00–11683, Adv. Pro. No. 00–90091, slip op. at 12–13 (Bankr.N.D.N.Y. July 23, 2004) (Adv.Pro. No. 153). It first determined that Mr. Hudson failed to present any new evidence challenging the court's initial determination that Mr. Corvetti had stand-

ing. *Id.* at 3. The court then determined that Mr. Hudson's new affidavit of disqualification was of no consequence because although the court had noted its absence in its decision, it still had fully evaluated Mr. Hudson's allegations made pursuant to 28 U.S.C. § 144. *Id.* at 4–6. As to Mr. Hudson's second contention, the court noted that it had not referenced the argument in its 2004 decision because it had been fully evaluated in its 2002 recusal decision. *Id.* at 6–7. Furthermore, the court pointed out that it was obligated to make the 1995 criminal referral pursuant to 18 U.S.C. § 3057, and that there is no due process right to notice and an opportunity to be heard before a criminal referral is made. *Id.* at 7–8. Finally, the court determined that the *Kensington* case was distinguishable from the facts in Mr. Hudson's case. *Id.* at 8–10. As a result, the court denied Mr. Hudson's motion for reconsideration. Mr. Hudson did not appeal the decision.

### 2005 Littlefield Decision on Remand

On December 30, 2005 this court issued its decision resolving the 2003 McAvoy Remand (the "2005 Littlefield Decision on Remand") resolving the narrow question of whether Mr. Hudson's potential settlement with the Trustee justified reconsideration of the court's denial of Mr. Hudson's discharge. Mr. Corvetti continued to oppose Mr. Hudson's discharge on the remand. The court ultimately found that no settlement was ever reached, and as a result there was no basis to modify the 2001 Littlefield Decision under Judge McAvoy's narrow instruction. *Washington 1993, Inc. v. Hudson (In re Hudson)*, No. 00–11683, Adv. Pro. No. 00–90091, slip op. at 12 (Bankr.N.D.N.Y. Dec. 30, 2005) (Adv. Pro. No. 172). Furthermore, the court found that Mr. Hudson's attempts to recharacterize the scope of the remand were frustrated by the "law of the case" doctrine, which limits a trial court to evaluate on remand only those issues mandated by the appellate court. *Id.* at 11–14.

### District Court Bars Mr. Corvetti from Opposing Discharge

While the 2003 McAvoy Remand was pending, Mr. Hudson appealed the court's March 17, 2005 decision allowing Mr. Corvetti to continue to be heard in connection with the appeal of the § 727 cause of action. Judge Scullin heard the appeal and issued a written decision on July 9, 2007 overturning this court's decision that found the non-opposition clause in the settlement of the § 523 claims unenforceable. *Corvetti v. Hudson*, 1:06–CV–537 (FJS) (N.D.N.Y. July 9, 2007) (Adv.Pro. No. 04–90005, No. 181). The district court determined that the clause was in fact presumed enforceable in the absence of contrary language in Judge McAvoy's November 20, 2002 order.

### 2007 Scullin Remand

Having finally resolved the question of whether Mr. Corvetti may be heard on the appeal of the § 727 cause of action, Judge Scullin then issued a decision (the "2007 Scullin Remand") on Mr. Hudson's appeal of the 2005 Littlefield Decision on Remand on August 3, 2007. *Washington 1993, Inc. v. Hudson*, No. 1:06–CV–253 (FJS) (N.D.N.Y. Aug. 3, 2007) (Adv.Pro. No. 186). The 2007 Scullin Remand provides a synopsis of the various issues and decisions regarding this matter and determined that:

> In light of the court's ruling that Mr. Corvetti cannot oppose Mr. Hudson's § 727 discharge, the Court finds that it is appropriate for the Bankruptcy Court to determine in the first instance what effect, *if any,* the District Court's subsequent decisions in *Hudson v. Corvetti* and *Corvetti v. Hudson* have on the Bankruptcy Court's decision to deny Mr. Hudson's discharge.

*Id.* at 4–5 (emphasis added). The district court therefore remanded the matter to this court for "further proceedings consis-

tent with [the] decision." *Id.* at 5. The court now resolves the narrow question presented in the remand of whether the district court's subsequent holdings in the litigation between Messrs. Hudson and Corvetti would have had any impact on this court's decision to deny Mr. Hudson his discharge.[8]

## SUMMARY OF ARGUMENTS

Mr. Hudson presents three arguments justifying vacatur of the 2001 Littlefield Decision denying him a discharge. First, he argues that certain alleged facts constitute material developments in the case and counsel in favor of granting him a discharge. Specifically, that: (a) Mr. Corvetti supports issuance of his discharge and has withdrawn all claims and arguments opposing his discharge, and (b) there are no remaining creditors objecting to discharge. Second, Mr. Hudson argues that he should be permitted to submit new evidence in the adversary proceeding that supports granting him a discharge. Third, Mr. Hudson argues that the 2001 Littlefield Decision should be vacated because of exceptional circumstances in the case, in-

cluding: the potential harm to his career and livelihood, the settlement with Mr. Corvetti and the alleged absence of any other objector to his discharge, and the potential incorrectness of the 2001 Littlefield Decision. Alternatively, should the court determine that it may not vacate the 2001 Littlefield Decision, Mr. Hudson argues that the court should simply modify it and grant his discharge.

During oral argument, the court asked whether Mr. Hudson's new evidence arguments—which go beyond the narrow scope of the remand—would be more appropriately brought under Federal Rule of Civil Procedure 60(b)(2),[9] which allows admission of new evidence within one year of entry of judgment. If this is the case, Mr. Hudson's arguments premised on the discovery of new evidence should presumably be denied for being untimely. Mr. Hudson filed a supplemental brief addressing this question in which he argued that the court has authority to revisit the 2001 Littlefield Decision by virtue of its equitable powers granted under § 105 and Rule 60(b)(6), which is not subject to the timeliness constraint of Rule 60(c).

---

8. A great deal of time has elapsed between the issuance of the 2007 Scullin Remand decision and the issuance of this opinion. The delay resulted from Mr. Hudson's decision to once again seek the court's recusal or disqualification from the case, alleging that the court had *ex parte* and *sua sponte* amended the adversary complaint, cover sheet, and docket by adding an additional § 727 cause of action. (*See* Mot. for Recusal/Disqualification and Vacatur of Decision and Order and Return of this Case to Sr. Dist. Ct. Judge Scullin for Further Proceedings (Adv.Pro. No. 196).) A hearing was held on October 10, 2007, and the court took the matter under advisement in order to issue a written decision. The court issued a decision on September 25, 2008 declining recusal and ordering Mr. Hudson to appear and show cause as to why he should not be sanctioned under Federal Rule of Bankruptcy Procedure 9011 for his baseless accusation of this court and its employees of having committed or been complicit in a

crime. (*Id.*) On December 11, 2008, after a hearing on December 3, this court issued an order memorializing its finding that Mr. Hudson had violated Rule 9011. (Adv.Pro. No. 234.) Mr. Hudson filed a motion for reconsideration of the court's order, which is currently pending before the court. (Adv.Pro. No. 238.)

Having resolved Mr. Hudson's Motion for Recusal/Disqualification, the court issued a separate briefing order to resolve Judge Scullin's question on remand on September 26, 2008 (Adv.Pro. No. 216), which was amended twice at Mr. Hudson's request. (Adv.Pro.Nos. 225, 226, 233, 235.) As a result, oral argument on the 2007 Scullin Remand was held on February 25, 2009, after which the court took the matter under advisement.

9. Rule 9024 of the Federal Rules of Bankruptcy Procedure fully incorporates Rule 60(b) of the Federal Rules of Civil Procedure.

## DISCUSSION

At oral argument, Mr. Hudson's counsel acknowledged that the papers before the court constituted both a response to the remand and a motion for vacatur of the 2001 Littlefield Decision denying discharge. As a result, the court addresses these issues jointly. In the court's view, Judge Scullin presented a straightforward and narrow question on remand. Mr. Hudson, however, responds with previously heard arguments that do little more than muddy the waters, thereby diverting attention from his failure to address the district court's specific question. Thus, the court shall first resolve the narrow question posited by the district court and the impact, if any, of Mr. Hudson's arguments for revocation of the 2001 Littlefield Decision on this analysis. Second, the court evaluates Mr. Hudson's vacatur arguments.

### I. Issue on Remand

### A. The district court's decisions in this adversary proceeding since the 2001 Littlefield Decision do not warrant revoking the denial of Mr. Hudson's discharge

The court first looks to the district court's rulings and isolates those that may have had an impact on the adversary proceeding in this court.[10] The only district court ruling of potential significance was the July 9, 2007 decision holding that Mr. Corvetti was barred as of November 20, 2002 from being heard in the appeal of the 2001 Littlefield Decision denying Mr. Hudson's discharge.[11] *Hudson v. Corvetti*, No. 1:05–CV–472 (lead), 1:05–CV–560 (member) (FJS). The court has issued three decisions in this adversary proceeding that could have potentially been impacted by this ruling—the 2004 Littlefield Recusal Decision, the 2004 Littlefield Reconsideration of Non–Recusal, and the 2005 Littlefield Decision on Remand.

### 1. 2004 Littlefield Recusal Decisions

■ The court is faced with the question of whether it would have reached a different result in evaluating Mr. Hudson's request for intradistrict transfer or recusal had Mr. Corvetti not appeared or filed papers in the matter. Upon review of Mr. Hudson's papers and the 2004 Littlefield Recusal Decisions, the court determines that Mr. Corvetti had no impact on the ultimate resolution of the matter.

Mr. Corvetti provided no arguments or law regarding the question of intradistrict

---

**10.** The following is a listing of the district court decisions implicated in the 2007 Scullin Remand: *2003 McAvoy Remand*, No. 3:01–CV–1474 (N.D.N.Y. June 13, 2003) (remanded to bankruptcy court to determine effect of post-trial settlement with trustee); *Corvetti v. Hudson*, 04–MC–14 (N.D.N.Y. July 14, 2004) (Adv.Pro. No. 04–90005, No. 27) (denying Mr. Corvetti's motion to withdraw reference of the adversary proceeding to the bankruptcy court); *Hudson v. Corvetti*, 1:05–CV–472 (N.D.N.Y. May 23, 2005) (Adv.Pro. No. 04–90005, No. 106) (ordering the parties to present their dispute concerning the proper designation of the record on appeal to the bankruptcy court); *Hudson v. Corvetti*, No. 1:05–CV–472 (lead), 1:05–CV–560 (member) (FJS) (N.D.N.Y July 9, 2007) (reversing the bank-

ruptcy court's order of March 17, 2005 holding that Mr. Corvetti could continue to oppose Mr. Hudson's discharge); *Corvetti v. Hudson*, 1:06–CV–537 (N.D.N.Y. July 9, 2007) (Adv. Pro. No. 185) (affirming bankruptcy court decision of February 15, 2006 approving the 2002 settlement agreement with the exception of the non-opposition clause).

**11.** In the 2007 Scullin Remand, the district court indicated that the non-opposition agreement was approved as of November 20, 2002. *2007 Scullin Remand*, No. 1:06–CV–253 (FJS), slip op. at 4–5 (N.D.N.Y. Aug. 3, 2007). As a result, the appeal may only impact this court's rulings that were issued after that date.

transfer. (*See* Corvetti Opp'n to Intradistrict Transfer/Recusal (Adv.Pro. No. 113); Letter of Kenneth Varley (Adv.Pro. No. 124).) In fact, Mr. Corvetti appears to have been more interested in achieving adjournment of the matter, rather than adjudication. (Adv.Pro. No. 113.) Meanwhile, the court's interpretation of its own local rule, and the clear distinctions between the cases Mr. Hudson cited supporting his position and the facts of this case, led the court to the decision that intradistrict transfer was neither mandatory, nor advisable. *See 2004 Littlefield Recusal Decision*, Adv. Pro. No. 00–90091, slip op. at 7 (Bankr.N.D.N.Y. Jan. 30, 2004).

 Sections 144 and 455 of the Judicial Code address the problems of actual bias or prejudice on the part of the court and require recusal when bias or prejudice is found. *See Apple v. Jewish Hosp. & Med. Center*, 829 F.2d 326, 332–333 (2d Cir. 1987). The decision to grant or deny a recusal motion is a matter left to the court. *Id.* at 333. This court found that the allegations contained in Mr. Hudson's affidavit in support of recusal failed to allege any actual bias or prejudice on the part of the court justifying recusal under 28 U.S.C. §§ 144, 455(b)(1), and 455(b)(3). *See 2004 Littlefield Recusal Decision* at 8–9. Instead, Mr. Hudson relied on a string of facts—removed from context and presented towards his goal of recusal—that allegedly "singularly or cumulatively leads one to reasonably question the court's partiality." *Id.* at 8. The court found these facts failed to meet the standard of showing actual bias or prejudice.

Section 455(a) of the Judicial Code provides broader grounds for disqualification than §§ 144 or 455(b) (*Apple*, 829 F.2d at 333), maintaining that a court should recuse itself when "an objective, disinterested observer fully informed of the underlying facts, [would] entertain significant

doubt that justice would be done absent recusal." *U.S. v. Carlton*, 534 F.3d 97, 100 (2d Cir.2008) (citing *Diamondstone v. Macaluso*, 148 F.3d 113, 121 (2d Cir.1998)). The court, acknowledging this standard, proceeded to weigh all of Mr. Hudson's arguments questioning the appearance of the court's impartiality in the context of all the facts and determined that he had failed to justify his position.

Despite listing Mr. Corvetti's arguments and recognizing his right to appear on this matter, the court's analysis does not rely on any argument or law presented by Mr. Corvetti. (*See* Corvetti Opp'n to Intradistrict Transfer/Recusal (Adv.Pro. No. 113); Letter of Kenneth Varley (Adv.Pro. No. 124).) Furthermore, any factual point that Mr. Corvetti makes in his affidavit that may conceivably have been relied on by the court is independently corroborated by the record and the court's own perspective as a participant in these proceedings.

The court occupies an interesting position in deciding a recusal motion, as it is both the adjudicator of the motion as well as a party. As a result, the court was not reliant on Mr. Corvetti's presentation of the surrounding facts and arguments to gain a full understanding of the context and issues involved because it had been privy to the relevant facts and incidents all along. Thus, the court stands by the 2004 Littlefield Recusal Decision declining to recuse itself because its legal and factual analysis is sound and was not arrived at as a result of Mr. Corvetti's participation in the matter.

### 2. 2004 Littlefield Reconsideration of Non–Recusal

As to the 2004 Littlefield Reconsideration of Non–Recusal, much of the foregoing analysis continues to be applicable. Mr. Corvetti did appear and submit papers on the matter, but his arguments and sub-

missions are not referenced in the analysis of the decision. Furthermore, any factual points he makes are corroborated by the record. The court fully evaluated Mr. Hudson's arguments, as discussed previously, and determined that the first two were directly addressed in the original recusal decision, and that the *Kensington* decision, upon which Mr. Hudson bases his third argument, is distinguishable and therefore inapplicable to Mr. Hudson's motion.

Thus, despite the fact that Mr. Corvetti should not have appeared on Mr. Hudson's motions for recusal and reconsideration, his impact was of no consequence. The court's analysis in these decisions pays short shrift to his arguments, which were largely based on refuting Mr. Hudson's version of the facts. Therefore, the court determines that these decisions are not impacted by the district court's determination that Mr. Corvetti was disallowed from opposing Mr. Hudson in this adversary proceeding as of November 2002, and that its decisions denying to recuse itself are sound.

### 3. 2005 Littlefield Decision on Remand

■ Judge McAvoy remanded the proceeding in 2003 to determine what effect, *if any,* the settlement between the Trustee and Mr. Hudson would have had on the court's denial of Mr. Hudson's discharge. *2003 Remand,* No. 3:01–CV–1474, slip op. at 3–4 (emphasis added). When the court took up this narrow question, Mr. Corvetti appeared and submitted papers on the issue. Notably, the matter was decided on submission; thus, no trial took place and no evidence was admitted.

The court ultimately upheld its denial of Mr. Hudson's discharge based on the fact that there was no settlement. *See 2005 Littlefield Decision on Remand,* Adv. Pro. No. 00–90091, slip op. at 14 (Bankr. N.D.N.Y. Dec. 30, 2005). The court finds that the district court's subsequent decision deeming the non-opposition clause enforceable and preventing Mr. Corvetti's participation would have had no effect on the ultimate resolution of the 2003 McAvoy Remand. This is because the court would have been cognizant of the parties' failure to reach settlement regardless of Mr. Corvetti's presence, as it was in this court that the settlement unraveled.

Moreover, despite Mr. Hudson's attempts to recharacterize Judge McAvoy's remand as being so broad as to justify relitigation of the § 727 cause of action, the court held that under the principle of the "law of the case" doctrine, the trial court "has no power or authority to deviate from the mandate issued by an appellate court." *Oneida Indian Nation of New York v. County of Oneida,* 214 F.R.D. 83, 93 (N.D.N.Y.2003). In short, the court was asked if a settlement between Mr. Hudson and the Trustee would have impacted its prior ruling and, because the settlement never occurred, the court looked no further and stood by its prior decision.

■ The district court apparently found no flaw with this court's analysis and application of the law of the case doctrine, as its August 3, 2007 decision remanding the proceeding did not address the matter. As a result, the court finds that the district court's subsequent rulings in the litigation between Messrs. Hudson and Corvetti have no appreciable impact on its findings and conclusions.[12]

12. Mr. Hudson does make a halfhearted attempt in a footnote to argue that the law of the case doctrine is inapplicable to the matter at hand. Mr. Hudson contends that "[a]l-

though the district court did not expressly vacate its earlier affirmance, the granting of a motion for reconsideration and remand ... impliedly vacates the prior decision." (Mr.

Although the foregoing resolves the issue on remand, Mr. Hudson's broad interpretation of the remand necessitates further discussion. Mr. Hudson has presented several arguments that fail to fit within the ambit of the district court's mandate. The court shall therefore proceed to evaluate these arguments within the confines of the district court's remand and the law of the case doctrine in hopes of achieving finality in this matter.

### B. Mr. Hudson fails to present any compelling arguments for going beyond the scope of the remand

Mr. Hudson fails to address the narrow question on remand, but instead presents two arguments for setting aside the denial of discharge. First, Mr. Hudson argues that Mr. Corvetti's non-opposition to his discharge and withdrawal of all prior claims and arguments opposing his discharge are material developments counseling in favor of granting Mr. Hudson a discharge. Second, Mr. Hudson argues that new evidence indicates that granting him a discharge is appropriate. The first argument presumes that the now enforceable non-opposition clause necessitates granting Mr. Hudson a discharge. The second argument is premised on an overbroad interpretation of the remand and is tangential to the central issue. Nevertheless, the court shall address each argument in turn.

### 1. Mr. Corvetti's non-opposition to discharge and withdrawal *nunc pro tunc* of all prior statements, arguments, and papers does not justify discharge

■ Mr. Hudson argues that the alleged settlement with all known creditors,[13] *post-trial*, necessitates revocation of a decision denying his discharge and subsequent issuance of his discharge. This proposition strikes a blow at the indelibility of judicial findings positing that if the parties reach a private accommodation, then a judicial determination should be deemed void and vacated. Furthermore, this argument does not fall within the district court's mandate and is therefore violative of the law of the case doctrine.[14] Nevertheless, the court fully addresses the argument to demonstrate that its proposition—that a court's rulings may be bought and sold-is untenable even if it were appropriate under the remand.

Mr. Hudson points out that "[c]onsensual resolution of litigation has been favored in the law from time immemorial ... [and] [s]ettlements in discharge and dischargeability litigation are no less favored."

Hudson's Mem. of Law 13, n. 8 (Adv.Pro. No. 244).) The only support for this proposition cited by Mr. Hudson is a 2004 Second Circuit Court of Appeals decision in which the court on *sua sponte* reconsideration of its affirmance held that the vacatur of its decision, as well as the underlying district court decision, was appropriate to allow the district court to evaluate new information. *Hemstreet v. Greiner*, 378 F.3d 265 (2d Cir.2004). It is clear that the *Hemstreet* court did not impliedly vacate its prior decision. Rather, it vacated the decision explicitly and unequivocally. *See id.* at 269 ("On reconsideration, we vacate our earlier opinion in this case, vacate the district court's judgment, and remand the matter."). As a result, the court rejects Mr.

Hudson's proposition that reconsideration and remand necessarily constitutes vacatur of an entire decision, as such a result would be a distortion of the clear ruling handed down by the district court, and could potentially expose the judicial system to a torrent of relitigation unintended by the appellate courts.

**13.** The court will only accept this contention as alleged because there is nothing in the record substantiating it.

**14.** There are three exceptions to the law of the case doctrine, none of which are applicable to this argument. *See* discussion *infra* Part I.B.2 pp. 92–93.

*Hass v. Hass (In re Hass),* 273 B.R. 45, 50 (Bankr.S.D.N.Y.2002). Moreover, Mr. Hudson notes that under *State Bank of India v. Chalasani,* a creditor may settle with a debtor and dismiss a § 727 claim, so long as notice of the settlement was provided "to allow other creditors ... or the trustee to intervene or be substituted for the original complaining creditor in order to prosecute the § 727 complaint." 92 F.3d 1300, 1311 (2d Cir.1996). Mr. Hudson then proceeds to argue that the 2001 Littlefield Decision denying discharge should be revoked and his discharge granted because (1) he has reached settlement with all known creditors, and (2) Mr. Corvetti, as a result of a post-trial settlement agreement, has retroactively proclaimed non-opposition wherein he has withdrawn *nunc pro tunc* all prior statements, arguments, and papers which argue for denial of Mr. Hudson's discharge.[15]

The court concludes that Mr. Hudson's alleged settlement with his creditors, post-trial, does not justify discharge. Mr. Hudson points out that courts favor settlement and that § 727 actions are no longer con-

sidered to be outside the possibility of settlement by many courts. *See Wolinsky v. Maynard,* 269 B.R. at 540–41 ("The majority of bankruptcy courts that have considered the matter have concluded that a bankruptcy court may approve the compromise or settlement of a § 727 complaint if the settlement is fair and equitable and in the best interests of the estate."). Nevertheless, this court takes issue with the proposition that settlement years after a decision was rendered should necessitate revocation of that decision and subsequent issuance of discharge. Such a paradigm potentially frustrates the finality of judgments and suggests the commoditization of justice.

The United States Supreme Court mirrors this court's concerns in an analogous situation involving vacatur of a judgment rendered moot by post-trial settlement. *U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship,* 513 U.S. 18, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994). In that opinion, the Court, dismissing the argument that vacatur should follow as a matter of course in cases that are rendered moot by settlement, found that the benefits of settlement

---

**15.** It should also be noted that Mr. Corvetti's decision to support Mr. Hudson's discharge and his withdrawal of all prior claims and arguments raises questions. Mr. Corvetti's affidavit states that he has not received any money for his support of Mr. Hudson's cause and has, in fact, paid Mr. Hudson $60,000 for Mr. Hudson's post-petition attorney's fees. (Corvetti Aff. ¶ 2, Ex. I (Adv.Pro. No. 245).) It should be noted, however, that in return for a $60,000 payment of attorneys' fees Mr. Hudson dropped claims in excess of three million dollars. (Varley Aff. ¶ 7, Ex. J; Hudson General Release 1, Ex. H (Adv.Pro. No. 245).) Furthermore, the general releases that Messrs. Corvetti and Hudson exchanged indicate that the March 7, 2002 settlement agreement shall be honored, the agreement which contains the infamous non-opposition clause. (Corvetti General Release 2, Ex. G; Hudson General Release 3 (Adv.Pro. No. 245).) By the terms of the 2002 agreement

Mr. Corvetti was paid $60,000 in consideration for his promise to make certain representations and honor certain covenants including the promises "not to oppose [Mr.] Hudson's appeal of the Decision in regards to the denial of discharge pursuant to § 727" and to "sign document(s) to affirmatively communicate the withdrawal of opposition to the dismissal of the Adversary." (March 7, 2002 Settlement Agreement, Ex. B at 2, 3 (Adv.Pro. No. 245).) It seems an unlikely coincidence that nearly $250,000 in alleged attorneys' fees (*see* Corvetti Aff. ¶ 2) would be settled for the exact same amount exchanged in the 2002 agreement. Furthermore, the Corvetti Affidavit seems to fulfill the requirement that he provide signed documentation communicating his withdrawal of his opposition to dismissal. As a result, the court takes all representations Mr. Corvetti believes that Mr. Hudson deserves his discharge with great incredulity.

are often less pronounced post-trial, and that systematic vacatur in their wake would promote gaming of the system. *Id.* at 28–29, 115 S.Ct. 386.

█ Additionally, the Supreme Court in *Bancorp* notes that when federal courts contemplate equitable relief, they "must also take account of the public interest." [16] *Bancorp,* 513 U.S. at 27, 115 S.Ct. 386. The Court went on to hold that "[j]udicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur." [17] *Id.* (citing *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.,* 510 U.S. 27, 40, 114 S.Ct. 425, 126 L.Ed.2d 396 (1993) (Stevens, J., dissenting)); *see N.Y.S. Teamsters Council v. Borello Trucking, Inc.,* No. 96–CV0470, 1998 WL 404229, at *1 (N.D.N.Y. July 10, 1998) (Scullin, D.J.) ("When a clash between genuine adversaries produces a precedent ... the judicial system ought not to allow the social value of that precedent, created at a cost to the public and other litigants, to be a bargaining chip in the process of settlement. The precedent, a public act of a public official, is not the parties' property." (quoting *Mfrs. Hanover Trust Co. v. Yanakas,* 11 F.3d 381, 385 (2d Cir.1993))). In the present case, Mr. Hudson has allegedly reached settlement with all known creditors, and as a result he seeks revocation of the 2001 Littlefield Decision denying his discharge. Yet, in this court's opinion, allowing such an occurrence would be in direct contravention of the Supreme Court's holding in *Bancorp* that judicial determinations are not the property of the parties.

█ Moreover, the bankruptcy court for the Eastern District of California, in a directly analogous case, has concisely evaluated the question of whether post-trial settlement of a § 727 cause of action is appropriate, and found that "debtors should not be allowed to purchase a discharge to which, as a matter of law, they are not entitled." *Jacobson v. Robert Speece Props., Inc. (In re Speece),* 159 B.R. 314, 323 (Bankr.E.D.Cal.1993). In its decision, the *Speece* court correctly points out that "the denial of discharge is a public act of a public official that is not the parties' property." *Id.* at 321. Furthermore, the *Speece* court posits that allowing for the post-trial trafficking of a § 727 claim may "discourage pretrial settlements and would confer an inappropriate windfall on the winning party in the form of an opportunity to gain a more favorable settlement by selling off the public advantages of the judgment." *Id.* Finally, the *Speece* court reaches the equities of the matter, finding that a debtor forfeits his right to a fresh start when he violates § 727. *Id.* at 322. This court agrees with the *Speece* determination that a discharge denied in a § 727 action may not be annulled via settlement post-trial.

---

16. *See* discussion *infra* Part II.A p. 98.

17. Mr. Hudson does point out that the Second Circuit has held that bankruptcy court decisions "are not precedential in a technical sense." *ATSI Communications, Inc. v. Shaar Fund, Ltd.,* 547 F.3d 109, 112 (2d Cir.2008). Nonetheless, the court has difficulty believing that because its decisions are not technically precedential the Supreme Court intended its decisions to be the bargaining chips of private litigants. Furthermore, accepting Mr. Hudson's expansive interpretation of *ATSI Communications* would certainly disrupt the judicial system as the Supreme Court in *Bancorp* feared. *See Bancorp,* 513 U.S. at 27, 115 S.Ct. 386 (noting that allowing collateral attack of judgments via vacatur would "disturb the orderly operation of the federal judicial system").

Furthermore, this court has located only two cases in which a § 727 action was settled post-trial and resulted in reversal of the denial of discharge. *See In re Sheffer*, 350 B.R. 402 (W.D.Ky.2006) (approving proposed global settlement of § 727 complaint challenging debtor's right to discharge post-trial);[18] *Clark v. Hiller (In re Hiller)*, 179 B.R. 253 (D.Colo.1994) (permitting settlement of § 727 complaint challenging debtor's right to discharge post-trial), 232 B.R. 480 (D.Colo.1999) (ordering bankruptcy court to vacate decision denying discharge).[19] The court disagrees with the *Sheffer* and *Hiller* courts' determinations that settlement post-trial may justify revocation of a decision denying discharge and subsequent issuance of discharge. While the ultimate goal of bankruptcy is to afford the debtor a fresh start, this court—in line with the Supreme Court and the Second Circuit—does not accept the proposition that judicial findings of fraud and bad faith, which were affirmed on appeal, may be negotiated away as though they were little more than advisory statements. *Bancorp*, 513 U.S. at 28–29, 115 S.Ct. 386; *Microsoft Corp. v. Bristol Tech., Inc.*, 250 F.3d 152, 154 (2d Cir.2001); *Teamsters Council*, 1998 WL 404229, at *1; *Speece*, 159 B.R. at 321. Allowing such a transaction would be tantamount to horse trading of discharges, and completely transform the court from an arbiter of justice into a marketplace of justice. The court cannot sanction this abuse of the system or the threat it engenders to the finality of judgments and proper functioning of the justice system, and thus declines to follow the path of the *Sheffer* and *Hiller* courts.

### 2. Mr. Hudson fails to present any new evidence justifying discharge

■ Mr. Hudson alleges that new evidence exists which justifies deviating from the law of the case doctrine. There are three situations when a trial court is not bound by the law of the case doctrine. These exceptions occur when there is: (1) an intervening change in controlling law, (2) a need to correct a clear error of law or to prevent manifest injustice, or (3) substantially different evidence is available. *U.S. v. Sanchez*, 35 F.3d 673, 677 (2d Cir. 1994). Before addressing the merits of this evidence, however, the court must first determine its admissibility under the Federal Rules of Civil Procedure.

■ New evidence may be introduced by a party seeking relief from judgment under Rule 60(b)(2), which provides:

> **(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order or proceeding for the following reasons:
>
> . . . .
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b).

Fed.R.Civ.P. 60(b)(2). Meanwhile, Rule 60(c) provides that: "A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after entry of the judgment or order or the date of the proceeding." Fed.R.Civ.P. 60(c). Thus, any new evidence presented by Mr. Hudson must: (1) be newly discovered; (2) could not, with

---

**18.** Mr. Sheffer was ultimately issued a discharge by a separate order on October 2, 2006. (*see* Order Granting Motion for Entry of Discharge, No. 03–33989 (No. 290); Order Discharging Debtor (No. 291).)

**19.** The court enters into a full discussion of *Hiller* in Part II.A.2 of the discussion. *See infra* pp. 100–01.

reasonable diligence, have been discovered in time for a new trial; and (3) be presented within a year of entry of the judgment. The third element of this admissibility test presents Mr. Hudson's first challenge. This court rendered a decision in this case over eight years ago. That decision was affirmed in its entirety seven years ago, it was then remanded on a narrow question six years ago, and the court issued a new decision reaching the same conclusion as in its original decision four years ago. Any new evidence that Mr. Hudson has to offer is thus clearly barred by the time limit for the admission of new evidence to reopen a judgment under Rule 60(c).[20]

Nevertheless, assuming *arguendo* that the evidence were admissible, it would have no impact on this court's decision denying discharge because it is not substantially different from the evidence presented at trial. The court therefore embarks on an evaluation of this evidence to illustrate this, and hopefully bring this matter to a close.

### a. Affidavit of James Greenan

 Mr. Greenan was Mr. Hudson's bankruptcy counsel when he first filed his case in Maryland in 1999. Upon settlement of a malpractice action brought against Mr. Greenan by Mr. Hudson, Mr. Greenan provided an affidavit laying out several particulars about his representation of Mr. Hudson and his testimony before this court in 2000. This affidavit was first presented to the court with Mr. Hudson's Affirmation in Support of Remand Motion in March 2004. (Adv.Pro. No. 138.) The court did not rely upon it, concluding that the question of fraud had been reviewed and affirmed by the district court. *2005 Littlefield Decision on Remand*, No. 00–11683, Adv. Pro. No. 00–90091, slip op. at 13 (Bankr.N.D.N.Y. Dec. 30, 2005).

Regardless, the court now addresses each of Mr. Hudson's arguments regarding the Greenan affidavit. Mr. Hudson argues that Mr. Greenan, upon the settlement of Mr. Hudson's malpractice claim against him, may now be more candid regarding the filing of Mr. Hudson's petition. Mr. Hudson presents three arguments based upon Mr. Greenan's affidavit which allegedly justify revisiting the 2001 Littlefield Decision. These arguments are

(1) that Mr. Hudson provided [Mr. Greenan's] firm with "full and timely disclosure of all his property interests," including the fraudulent conveyance lawsuit filed by Mr. Corvetti, Greenan Aff., ¶¶ 7, 9; (2) that [Mr. Greenan's] firm "inadvertently omitted" the fraudulent conveyance lawsuit from the Statement of Financial Affairs, *id.* at ¶ 7; and (3) that there "was never any indication to [Mr. Greenan or his] staff that Mr. Hudson was aware of the omission or was attempting to hide or withhold any information about the 'omitted lawsuits[.]' " *[I]d.*

(Mr. Hudson's Mem. of Law 14 (Adv.Pro. No. 253).)

As to the first assertion that Mr. Hudson provided the firm with full and timely disclosure of all his property interests on November 11, 1999 (Greenan Aff. ¶¶ 7, 9, Ex. E (Adv.Pro. No. 245).), this is old evidence. It is evident from the record that Mr. Hudson faxed a two-page list of lawsuits to Mr. Greenan's office that included the omitted lawsuits. (Day 6 Tr. 125–28.) Mr. Hudson argued this point in

---

**20.** Mr. Hudson argues in his supplemental filing that new evidence is also admissible under Rule 60(b)(6), which is not subject to the one year restraint of Rule 60(c). The court disagrees and fully analyzes the proposition in Part II.A of the discussion. *See infra* pp. 97–99.

2001, and Mr. Greenan testified to it at trial. (*Id.*)

Now, Mr. Hudson presents an affidavit from Mr. Greenan that reiterates the story of the faxed list of lawsuits and Mr. Hudson's subsequent answer to Question 4(a) on Mr. Greenan's Statement of Financial Affairs questionnaire. Nevertheless, the issue is not whether Mr. Hudson disclosed the lawsuits to Mr. Greenan as Mr. Hudson attempts to argue, but whether he disclosed them on his Statement of Financial Affairs. *See* 11 U.S.C. § 727(a)(4)(A) (2008); *2001 Littlefield Decision,* No. 00–11683, Adv. Pro. No. 00–90091, slip op. at 19 (Bankr.N.D.N.Y. Aug. 21, 2001). Mr. Hudson claims that he included the missing lawsuits in his answer to Question 4(a), but Mr. Greenan only avers that they are not in the file and may have either been lost by his office or were not provided by Mr. Hudson. (*See* Greenan Aff. ¶ 14) ("Mr. Hudson prepared a new three page list, the first page of which [Mr. Hudson] either inadvertently failed to send to the law firm ... or was sent to the law firm and was lost."). Mr. Greenan did not admit during the trial that his firm may have lost the first page, but Mr. Hudson did claim that he had provided the page, though he did not attempt to explain its disappearance any further at trial. (Day 6 Tr. 174.) Mr. Greenan's statement addresses the possibility that his office may have lost the page of lawsuits, but this is not new information. Rather, it simply articulates the question the court disposed of in 2001—did Mr. Hudson fail to include the page or was it lost due to another's fault? Acknowledging the possibility that Mr. Greenan's office lost the page is not tantamount to a candid admission that the office had, in fact, lost the information.

Moreover, Mr. Hudson is an attorney, he has filed multiple bankruptcy cases, he was given the opportunity to examine his Statement of Financial Affairs multiple times, and testified that he spent a total of nearly two hours reviewing it. (Day 6 Tr. 178.) Despite all this he did not discover the error, even though several lawsuits were omitted and one of them prompted his filing in the first place. (Day 6 Tr. 4, 214.) Thus, the court found, and continues to believe, that Mr. Hudson did not accidentally omit the lawsuits.

Mr. Hudson's second point relies upon a passage in Mr. Greenan's affidavit, where Mr. Greenan, referring to the unsolicited November 11, 1999 fax, states that "[d]ue to certain internal processes used by the law firm those lawsuits were inadvertently omitted from [Mr. Hudson's] Statement of Financial Affairs." (Greenan Aff. ¶ 7.) This passage presents no new evidence. It was clear at trial that Mr. Greenan received the fax, but did not rely upon it to prepare the Statement of Financial Affairs because the firm had a special questionnaire used in preparing Statements of Financial Affairs that Mr. Hudson filled out. (Day 6 Tr. 129–130.)

Finally, Mr. Hudson infers some importance from Mr. Greenan's attestation that there "was never any indication to me or my staff that Mr. Hudson was aware of the omission or was attempting to hide or withhold any information about the 'omitted lawsuits.'" (Greenan Aff. ¶ 7.) This attestation also fails to present any new evidence. The fact that Mr. Greenan now declares that he never noticed Mr. Hudson commit any fraudulent acts does not constitute new or compelling evidence in the case, especially since Mr. Greenan never testified that he observed Mr. Hudson commit any fraudulent acts in the first place.

In sum, upon an exhaustive review of the record, the court finds that Mr. Greenan's affidavit does not present any new or compelling evidence that would justify an

exception to the law of the case doctrine and a rehearing of the § 727 cause of action against Mr. Hudson. Rather, it seems as though Mr. Hudson is attempting to repackage old evidence and arguments nearly a decade after trial in an effort to obtain a different result.

### b. Affidavit of Kenneth Varley

■ Mr. Hudson also presents the affidavit of Mr. Varley, former counsel to Mr. Corvetti in this proceeding, claiming that it provides new evidence relevant to the court's finding of fraud. The Varley affidavit was "made as part of a final resolution of all outstanding claims between Washington 1993, Inc., Richard Corvetti, and Paul Hudson." (Varley Aff. ¶ 3.) Mr. Varley avers that he and Mr. Corvetti were provided with timely notice of the bankruptcy filing and that the Corvetti lawsuits were communicated to both the United States Trustee and the Chapter 7 Trustee when they were served with the papers seeking change of venue and the lifting of the automatic stay. (Varley Aff. ¶ 8, Ex. J (Adv.Pro. No. 245).) Mr. Hudson relies upon this statement and *In re Brown,* in which the Tenth Circuit concluded that "no inference of fraudulent intent can be drawn from an omission when *the debtor promptly* brings it to the court's or trustee's attention *absent other evidence of fraud.*" 108 F.3d 1290,1294 (10th Cir.1997) (emphasis in original). Alternatively, the bankruptcy court in the Middle District of Florida found the opposite to be true regarding the revelation by a debtor of an asset omitted on the Statement of Financial Affairs: "a subsequent disclosure would not absolve the debtor from the original false statements made under penalty of perjury." *In re Whitehead,* 278 B.R. 589, 595 (Bankr.M.D.Fla. 2002).

Mr. Hudson seeks the admission of Mr. Varley's allegedly new evidence to show that he disclosed the existence of the lawsuit to the court, despite the fact that several months passed before he amended the Statement of Financial Affairs. Notably, Mr. Varley's reference to one of the disclosures of the omitted lawsuits was specifically noted in this court's original opinion denying discharge. *See 2001 Littlefield Decision,* Adv. Pro. No. 00–90091, slip. op. at 4 (Bankr.N.D.N.Y. Dec. 30, 2005). In light of the fact that the court took notice of this disclosure, Mr. Varley presents no new evidence for the court to weigh. Furthermore, the value of this evidence remains questionable, as none of these docket entries had the specific purpose of bringing the omission to the attention of the Trustee, but did so only indirectly. Additionally, nearly two months elapsed before the first disclosure on January 24, 2000 and the amendment of the Statement of Financial Affairs on March 14, 2000, which challenges the inference of disclosure Mr. Hudson requests the court to draw.

Mr. Hudson cites a laundry list of cases supporting the proposition that "where direct evidence establishes the absence of fraudulent intent, otherwise legitimate inferences of fraudulent intent based on circumstantial evidence should be given less weight." (Mr. Hudson's Mem. of Law 15 (Adv.Pro. No. 253).) Mr. Hudson maintains that the court failed to apply this standard by relying only on circumstantial evidence to reach its finding of fraudulent intent, while the affidavits of Messrs. Greenan and Varley provide direct evidence of an absence of fraudulent intent. (*Id.*) This line of argument presumes that the direct evidence Mr. Hudson presents is indeed new evidence. Moreover, even assuming it is new evidence, it hardly amounts to the direct evidence that Mr. Hudson alleges it to be.

The Second Circuit has defined direct evidence "as evidence tending to show, without resort to inference, the existence of a fact in question. This is often contrasted with 'circumstantial,' or 'indirect' evidence which requires the factfinder to take certain inferential steps before the fact in question is proved." *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1183 (2d Cir.1992). All of the alleged new evidence Mr. Hudson presents in the Greenan and Varley affidavits is circumstantial. Mr. Hudson asks the court to draw the inference from this evidence that because the lawsuits were disclosed by Mr. Hudson in other ways than on the Statement of Financial Affairs he lacked the intent to omit them fraudulently. Such evidence is certainly relevant to a finding of fraudulent intent. Yet, it is not direct evidence disproving fraudulent intent because it requires the court to infer innocent intent rather than proving it. Moreover, the bulk of this evidence, as noted in the foregoing analysis, was heard and noticed by the court in reaching the 2001 Littlefield Decision. Thus, the court does not accept Mr. Hudson's assertions that the Greenan and Varley affidavits present new direct evidence of honest intent.

### c. *Evidence Refuting Proof of Falsity*

■ The final assertions of new evidence that Mr. Hudson makes regard the court's finding that his decision to file in Maryland, rather than New York, was part of a "pattern of falsity." Mr. Hudson presents various quotations from Messrs. Greenan and Corvetti, as well as from the hearing transcripts from Maryland showing that Maryland was a proper venue. Once again, Mr. Hudson made these arguments at trial and had the opportunity to make them on both the appeal and reconsideration of affirmance. (*See* Day 6 Tr. 121 (Greenan: "I suggested to [Mr. Hudson] if he were going to file bankruptcy

that it would appear to be appropriate that he should file in Maryland.").) This line of argument is yet another attempt by Mr. Hudson to dredge up old arguments in an effort to re-litigate issues that have been resolved and appealed. The court therefore stands by its weighing of the evidence and analysis of the case law in its original decision.

\* \* \* \* \* \*

In summation, the district court remanded this matter on a narrow question: "what effect, *if any*, the district court's subsequent decisions in *Hudson v. Corvetti* and *Corvetti v. Hudson* have on the bankruptcy court's decision to deny Mr. Hudson's discharge." *2007 Scullin Remand*, No. 1:06–CV–253 (FJS), slip op. at 4–5 (N.D.N.Y. Aug. 3, 2007) (emphasis added). The court determines that these decisions, particularly with regard to the newfound enforceability of the non-opposition agreement, have no impact on this court's decisions rendered since November 20, 2002, the effective date of the non-opposition agreement. This is based first on the fact that discharge was denied before the relevant settlement agreement was executed, and second on the fact that Mr. Corvetti's filings and appearance in this court's proceedings on Mr. Hudson's 2003 recusal motion and the 2003 McAvoy Remand were inconsequential.

With respect to all of Mr. Hudson's arguments, the court finds that Mr. Corvetti's non-opposition and *nunc pro tunc* withdrawal of all arguments post-trial do not qualify as an exception to the law of the case doctrine, or justify revocation of the court's 2001 Littlefield Decision denying discharge on an equitable basis. Furthermore, the court finds that Mr. Hudson's new evidence arguments—which are based on an overbroad interpretation of the remand to begin with—fail under Rule

60(b)(2) because the evidence presented is neither timely nor new.

## II. Motion to Vacate

### A. Mr. Hudson fails to present an appropriate basis for vacatur of the 2001 Littlefield Decision denying discharge

Mr. Hudson argues that even if the court determines that he is not entitled to discharge under the narrow scope of the remand, he is entitled to vacatur of the 2001 Littlefield Decision. In his memorandum of law, Mr. Hudson relies upon the Supreme Court's holding that the decision to vacate a judgment "is an equitable one, and exceptional circumstances may conceivably counsel in favor of such a course." *Bancorp*, 513 U.S. at 29, 115 S.Ct. 386. Mr. Hudson proceeds to present various arguments of exceptional circumstances which he asserts justify vacatur.

Unfortunately, Mr. Hudson takes this portion of the Supreme Court's holding entirely out of context. For the Court further holds, in the very same paragraph no less, that

> [o]f course even in the absence of, or before considering the existence of, extraordinary circumstances, a court of appeals presented with a request for vacatur of a district-court judgment may remand the case with instructions that the district court consider the request,

> which it may do pursuant to Federal Rules of Civil Procedure 60(b).

*Id.* (emphasis added). In the present matter, this court occupies the position of the district court in Bancorp, while the district court acts as the court of appeals. Thus, it seems that any vacatur issued by this court must be within the ambit of Rule 60(b).[21]

 Mr. Hudson correctly points out, in his supplemental filing, that "courts of bankruptcy are essentially courts of equity, and their proceedings inherently proceedings in equity." *Local Loan Co. v. Hunt*, 292 U.S. 234, 240, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). The bankruptcy court's equitable powers are embodied in § 105, which provides the court with the "vital authority ... 'to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions' of this title." *In re Baldwin–United Corp. Litigation*, 765 F.2d 343, 348 (2d Cir.1985). Nevertheless, § 105 does not provide the court with unlimited equitable powers; they are confined within the scope of the Bankruptcy Code and Rules. *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988).

 Here, the court and Mr. Hudson part ways in their respective analyses. Mr. Hudson argues that the applicable provision in this case is Rule 60(b)(6), which provides that:

---

**21.** The district court, as a court of appellate jurisdiction may escape the binds of Rule 60(b) by virtue of 28 U.S.C. § 2106, which provides that:
> The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.

28 U.S.C. § 2106 (2008). This provision does not provide this court any power to revisit the 2001 Littlefield Decision, thereby indicating that the only proper basis for revisiting the decision is under Rule 60(b). *See Cummings Props., LLC v. Admetric Biochem, Inc.*, 300 B.R. 141, 147 (Bkrtcy.D.Mass.2003) (holding that the bankruptcy court lacked the equitable authority under § 2106 to vacate its prior decision because it was the trial court, as opposed to the appellate court).

**(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

. . . .

(6) any other reason that justifies relief. Fed.R.Civ.P. 60(b)(2). Rule 60(b)(6) admittedly "confers broad discretion on the trial court to grant relief when appropriate to accomplish justice [and] it constitutes a grand reservoir of equitable power to do justice in a particular case." *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 55 (2d Cir.2004) (citing *Matarese v. LeFevre*, 801 F.2d 98, 106 (2d Cir.1986)). Additionally, Rule 60(b)(6) "is properly invoked where there are extraordinary circumstances, or where the judgment may work an extreme and undue hardship." *Matarese*, 801 F.2d at 106.

What Mr. Hudson fails to address in his analysis of Rule 60(b)(6), is the question of whether or not an argument that would be appropriate under Rule 60(b)(1)-(5) may be brought under Rule 60(b)(6). The Second Circuit has held that "relief under clause (6) is not available unless the asserted grounds for relief are not recognized in clauses (1)-(5)." *In re Emergency Beacon Corp.*, 666 F.2d 754, 758–59 (2d Cir.1981) (citing *U.S. v. Cirami*, 563 F.2d 26, 32 (2d Cir.1977)). Thus, Mr. Hudson's arguments predicated upon new evidence must be brought pursuant to Rule 60(b)(2).

The problem for Mr. Hudson, however, is that Rule 60(b)(2), as discussed previously,[22] is qualified by Rule 60(c), which bars the admission of new evidence more than one year after judgment has been entered. *See* Fed.R.Civ.P. 60(b)(2), (c). As a result, any new evidence contained in the affidavits of Messrs. Greenan, Varley, and Corvetti is untimely, as this court issued its judgment in August 2001. Furthermore, the district court subsequently affirmed the court's findings with the exception of the narrow question presented on remand.

Moreover, the Supreme Court found that allowing "a party who steps off the statutory path to employ the secondary remedy of vacatur as a refined form of collateral attack on the judgment would—quite apart from any considerations of fairness to the parties—disturb the orderly operation of the federal judicial system." *Bancorp*, 513 U.S. at 27, 115 S.Ct. 386. In light of this holding, approving Mr. Hudson's attempt at an end run around the judicial system has the potential to throw the system into disarray as cases are litigated, settled post-trial, and vacated in an elaborate, money-fueled exchange.

The *Speece* court examined the dangers of vacatur as a result of post-trial settlement in the context of a § 727 action. In its decision, the *Speece* court points out the value of finality of judgments, particularly judgments rendered after a trial absent any error warranting reversal.[23] *Speece*, 159 B.R. at 322. Furthermore, the *Speece* court expressed concerns that

> permitting vacatur of a judgment denying discharge in response to return of concealed property would create the wrong incentive. It would become worthwhile to hide property at the time of filing bankruptcy in the expectation that, if the debtor loses any ensuing objection to discharge litigation, the dis-

---

**22.** *See* discussion *supra* Part I.B.2 pp. 92–93.

**23.** The public policy arguments advanced by the Supreme Court are particularly relevant to this point. *See* discussion *supra* Part I.B.1 pp. 90–91.

charge could be retrieved by handing over the hidden property.

*Id.* Again, this court agrees with the *Speece* analysis and therefore finds that "[w]aiting until after the discharge is denied is waiting too long" and that "[w]here the judgment is premised on false oaths made with the intent penalized by section 727(a)(4)(A)" a vacatur is particularly inappropriate. *Id.* at 323.

■■■ Nevertheless, assuming *arguendo* that Mr. Hudson is correct, and he may present his arguments under Rule 60(b)(6), the court finds that he still fails to present any exceptional circumstances that warrant vacatur. The court therefore presents the following analysis of Mr. Hudson's exceptional circumstances arguments in support of this position.

### 1. Potential harm to Mr. Hudson's career and livelihood

Mr. Hudson's first alleged exceptional circumstance justifying vacatur is that the finding of civil fraud that gave rise to the denial of his discharge potentially endangers his career as an attorney. Mr. Hudson presents no case law finding a similar situation to be an exceptional circumstance, nor has the court located any. Furthermore, it is irrelevant that being an attorney has brought Mr. Hudson great personal satisfaction. Mr. Hudson committed fraud in the filing of his Statement of Financial Affairs and, as a result, he must face the repercussions of his actions—be they in the bankruptcy court or before the grievance committee. Moreover, a license to practice law is presumably not a prerequisite to the promotion of airline security, a task that Mr. Hudson maintains is even more meaningful than

his chosen profession. (Mr. Hudson's Mem. of Law 19 (Adv.Pro. No. 253).) Thus, while the potential loss of his license to practice law is an unfortunate personal circumstance, it is not an extraordinary circumstance justifying vacatur.

### 2. Settlement with Mr. Corvetti and absence of any other objector to discharge

Mr. Hudson also argues that his settlement with Mr. Corvetti and the alleged settlements with all other known creditors constitutes an exceptional circumstance justifying vacatur.[24] The Supreme Court has held that:

> mootness by reason of settlement does not justify vacatur of a judgment under review. This is not to say that vacatur can never be granted when mootness is produced in that fashion. As we have described, the determination is an equitable one, and exceptional circumstances may conceivably counsel in favor of such a course. It should be clear from our discussion, however, that those exceptional circumstances do not include the mere fact that the settlement agreement provides for vacatur—which neither diminishes the voluntariness of the abandonment of review nor alters any of the policy considerations we have discussed.

*Bancorp,* 513 U.S. at 29, 115 S.Ct. 386. Admittedly, the settlement between Messrs. Hudson and Corvetti did not provide for vacatur of the judgment, but the court believes the *Bancorp* holding is still informative. To begin with, *Bancorp* notes that vacatur is an "extraordinary remedy"—something that informs this entire analysis. *Id.* at 26, 115 S.Ct. 386. Moreover, the Supreme Court appears to

---

**24.** Mr. Hudson also argued that it was not opposed by the United States Trustee, but at oral argument on February 25, 2009, the Trustee made very clear that even though formal opposition was not filed, that does not necessarily mean the Trustee supports granting Mr. Hudson a discharge.

hold that while settlement alone (particularly a settlement providing for vacatur by its terms) may not constitute an extraordinary circumstance justifying vacatur, it may be taken into account with other extraordinary circumstances to ultimately justify vacatur. Thus, in this court's view, the settlement must be accompanied by other exceptional circumstances to justify vacatur.

Despite the Supreme Court's conclusions in *Bancorp*, Mr. Hudson points to the *Hiller* case out of the District of Colorado, which relies on post-trial settlement as an exceptional circumstance justifying vacatur. Despite providing a precedent for the sort of post-trial settlement warranting discharge and vacatur that Mr. Hudson has taken part in, the *Hiller* case's atypical procedural history warrants caution. In *Hiller*, the debtor was denied a discharge pursuant to § 727 by Bankruptcy Judge Sidney B. Brooks. *Clark v. Hiller*, 148 B.R. 606 (Bankr.D.Colo.1992). District Court Judge Nottingham affirmed this decision on July 25, 1994. *Hiller*, 179 B.R. at 257. Yet, on the same day, Chief Bankruptcy Judge Matheson issued an order approving settlement among the parties in the main case, but not the underlying adversary proceeding. *See id.* Judge Nottingham subsequently vacated his affirmance and remanded the matter to the bankruptcy court to vacate its opinion and order denying discharge. *Id.* Nevertheless, Judge Brooks declined to vacate the denial of discharge for several reasons, not least of which was his finding that vacatur should only be granted upon a showing of exceptional circumstances. *Id.* at 259–60. The district court subsequently overturned the bankruptcy court's decision, finding exceptional circumstances based on the facts that Chief Bankruptcy Judge Matheson had approved the settlement agreement as being in the best interests of the bankruptcy estate and he was the judge assigned to

the main bankruptcy case, as opposed to Judge Brooks who was assigned only the adversary proceeding. *Hiller*, 232 B.R. at 481–82. Furthermore, the district court took the opportunity to point out that "[w]hile the bankruptcy court may disagree with the reasoning of this court and may think a decision wrong or incomplete, it does not have the option of simply declining to follow a clear and unambiguous order of this court." *Id.* at 482.

The court finds the *Hiller* case to be an aberration and declines to follow its example. A finding under § 727(a)(4) is the "death penalty of bankruptcy"—being the most draconian and punitive of measures in the Code. *Levine v. Raymonda (In re Raymonda)*, No. 99–13523, Adv. Pro. No. 99–91199, slip op. at 4 (Bankr. N.D.N.Y. Feb. 16, 2001). As a result, the court takes a denial of discharge under this provision, and, by extension, the reversal of denial of discharge, very seriously. It is beyond this court's comprehension that a post-trial settlement necessarily constitutes a means to abrogate a lawful finding of fraud. While the court is guided by the principal, as laid down in *Bancorp*, that extraordinary circumstances may justify vacatur in a case that is rendered moot by post-trial settlement, it does not accept the *Hiller* finding that approval of the settlement by a bankruptcy judge who was not even the trier of fact constitutes an exceptional circumstance. *Id.* Moreover, even if such a settlement could be treated as an exceptional circumstance justifying vacatur, the court finds that it must be accompanied by other exceptional circumstances to justify vacatur under the *Bancorp* standard. Finally, *Hiller's* awkward procedural history involving conflicting decisions issued by three different judges gives the court further reason to question its applicability. For the foregoing rea-

sons, the court declines to accept *Hiller* as instructive in evaluating this matter.

### 3. Potential incorrectness of the 2001 Littlefield Decision

Mr. Hudson bases his argument that the 2001 Littlefield Decision is potentially incorrect on the affidavits of Messrs. Greenan and Corvetti. As the court discussed previously, the evidence presented in these affidavits was raised and addressed in the multi-day October 2000 trial.[25] Mr. Hudson had the opportunity to argue that the evidence was not granted enough consideration in the 2001 Littlefield Decision in the appeal before the district court, which he did. (*See* Appellant's Br., Civil No. 3:01–CV–1474 (Jan. 22, 2002) (Dist.Ct. No. 32).) The district court subsequently affirmed the 2001 Littlefield Decision and has remanded the matter on narrow, unrelated, questions ever since. Moreover, Mr. Corvetti's support of granting Mr. Hudson his discharge is, at a minimum, questionable in light of his agreement with Mr. Hudson settling his opposition in the adversary proceeding. Allowing these affidavits to rise to the level of exceptional circumstances justifying vacatur would validate Mr. Hudson's efforts to present tired arguments and evidence, subverting the appeals process, and effectively gaining a second bite at the apple.

Mr. Hudson argues that *Microsoft Corp. v. Bristol Tech., Inc.,* supports his proposition that potential incorrectness of a prior decision is an exceptional circumstance warranting vacatur. 250 F.3d at 154. Yet, *Microsoft* is easily distinguishable from this matter because settlement was reached in *Microsoft* before the Second Circuit heard the appeal of the district court decision. *Id.* Thus, it was on the motion for vacatur that the court first had the opportunity to evaluate the merits of the district court's decision. Whereas, in this case, the district court has had multiple opportunities to evaluate the merits of the 2001 Littlefield Decision and has yet to question the basis for the holding—a basis that took notice of all of the arguments Mr. Hudson points to as being new exceptional circumstances.

\* \* \* \* \* \*

Thus, the court concludes that all new evidence presented in support of vacatur must be presented within the ambit of Rule 60(b)(2). Furthermore, the court concludes that there is no other reason that justifies vacatur under Rule 60(b)(6). Finally, the court concludes that the only potential exceptional circumstance presented by Mr. Hudson is the alleged settlement between him and all known creditors, including Mr. Corvetti, and that this circumstance must, in the interest of preserving precedent and justice, be supported by other independent exceptional circumstances in order to justify vacatur. As a result, the court finds that Mr. Hudson has not presented sufficient grounds justifying vacatur of the 2001 Littlefield Decision.[26]

### CONCLUSION

The court, upon extensive review of the record, concludes that the district court holdings in this adversary proceeding issued since the entry of the 2001 Littlefield Decision have no appreciable impact on its

---

**25.** *See* discussion *supra* Part I.B.2 pp. 93–97.

**26.** Mr. Hudson also argues that if the court determined that it is not within its power to vacate the 2001 Littlefield Decision, then it may modify the holding indicating that he had acted negligently rather than fraudulently. The court declines to modify the 2001 Littlefield Decision.

decision to deny Mr. Hudson a discharge. The validity of Mr. Corvetti's agreement not to oppose Mr. Hudson's discharge was inconsequential to the 2004 Littlefield Recusal Decisions and the 2005 Littlefield Decision on Remand, as Mr. Corvetti's presence had no discernable impact on the court's findings and conclusions resolving either matter. In resolving Mr. Hudson's recusal motion the court did not depend on Mr. Corvetti to enlighten it as to the arguments opposing recusal because the court was a participant in the matter under review. The irrelevance of Mr. Corvetti's participation in that matter can be seen in the absence of any reference to his arguments in the analysis of the decision.

Furthermore, in reaching the 2005 Littlefield Decision on Remand, the court was instructed by the district court to evaluate the impact of Mr. Hudson's settlement with the Trustee on its denial of discharge. A settlement was never reached. Furthermore, despite Mr. Hudson's efforts to recharacterize the district court's narrow remand as being a broad license permitting him to reargue the merits of this court's original decision, the court rightly relied upon the law of the case doctrine and confined its analysis to the narrow question raised by the district court. The district court has not questioned this analysis.

Despite the correctness of this court's reliance on the law of the case doctrine, it has endeavored to fully evaluate Mr. Hudson's arguments in both the context of the current remand and his motion for vacatur in hopes of reaching finality in this matter. Mr. Hudson argues that the affidavits offer new evidence that constitutes exceptional circumstances justifying vacatur of the 2001 Littlefield Decision and granting him a discharge. Upon an exhaustive examination of the record, the court finds this evidence to violate Rule 60(b)(2) as it is neither timely nor new.

Finally, the court rejects Mr. Hudson's arguments that settlement post-trial necessitates revocation of the denial of his discharge, granting of his discharge, and vacatur of the 2001 Littlefield Decision. Such a finding frustrates the principle of finality of judgments and renders judicial evaluations little more than commodities to be bought and sold. A denial of discharge under § 727 is the greatest penalty in the context of bankruptcy, and this court cannot sanction the proposition that parties may use it as a bargaining chip post-trial.

The court thus stands by the 2001 Littlefield Decision denying Mr. Hudson's discharge and all subsequent decisions supporting that determination. Furthermore, the court concludes that vacatur of the 2001 Littlefield Decision is unwarranted.

It is SO ORDERED.